17 U.S. 60 (____)
4 Wheat. 60
The CALEDONIAN: DICKEY, Claimant.
Supreme Court of United States.

*101] This cause was argued by D.B. Ogden, for *the appellant and claimant,[(a)] and by the Attorney-General, for the United States.[(b)]
February 16th. STORY, Justice, delivered the opinion of the court.
This is the case of an American ship, which sailed from Charleston, South Carolina, with a cargo of rice, bound to Lisbon, about the 28th of May 1813, under the protection of a British license. In the course of the voyage, the ship was captured by a British frigate, and sent into Bermuda for adjudication. Upon trial, she was acquitted, and her cargo being prohibited from exportation, was afterwards sold by the agent of the claimant, at Bermuda, *61 and the proceeds were remitted for his use. The ship sailed from Bermuda for the United States, in November 1813, and upon her arrival at Newport, in Rhode Island, was seized by the collector of that port, as forfeited to the United States. The libel contains four articles propounding the causes of forfeiture; first, for the ship's having on board and using a British license; secondly, for the ship's being engaged in trade with the enemy; and, thirdly and fourthly, for using a British license, contrary to the act of congress of the 2d of August 1813, ch. 56, prohibiting the use of British licenses.
It is unnecessary to consider the last two articles, *which are [*102 founded upon statutable prohibitions, because it is clear, that the two preceding articles, founded on the general law of prize, are sufficient to justify a condemnation jure belli, the proof of the facts being most clearly established.
The only questions which can arise in the case, are, whether the ship was liable to seizure for the asserted forfeiture, after her arrival in port; and, if so, whether the collector had authority to make the seizure. And we are clearly of opinion, in favor of the United States, on both points. It is not necessary, to enable the government to enforce condemnation in this case, that there should be a capture on the high seas. By the general law of war, every American ship, sailing under the pass or license of the enemy, or trading with the enemy, is deemed to be an enemy's ship, and forfeited as prize. If captured on the high seas, by a commissioned vessel, the property may be condemned to the captors, as enemy's property; if captured by an uncommissioned ship, the capture is still valid, and the property must be condemned to the United States. But the right of the government to the forfeiture, is not founded on the capture; it arises from its general authority to seize all enemies' property, coming into our ports, during war: and also from its authority to enforce a forfeiture against its own citizens, whenever the property comes within its reach. If, indeed, the mere arrival in port would purge away the forfeiture, it would afford the utmost impunity to persons engaged in illegal traffic, during war, for in most instances, the government *would have no means of ascertaining the offence, until [*103 after such arrival.
In respect to the other point, it is a general rule, that any person may seize any property forfeited to the use of the government, either by the municipal law, or by the law of prize, for the purpose of enforcing the forfeiture. And it depends upon the government itself, whether it will act upon the seizure. If it adopts the acts of the party, and proceeds to enforce the forfeiture by legal process, this is a sufficient recognition and confirmation of the seizure, and is of equal validity in law, with an original authority given to the party to make the seizure. The confirmation acts retroactively, and is equivalent to a command.
Decree affirmed, with costs.
NOTES
[(a)] He cited The Nelly, note to The Hoop, 1 Rob. 219; The Two Friends, Id. 283; The Thomas Gibbons, 8 Cranch 421, to show, that the vessel could not be seized as prize, after her arrival in port, nor by a non-commissioned seizer.
[(b)] Citing The Ariadne, 2 Wheat, 143.